STATE v. EARL GRIFFIN.

(Filed 24 September, 1952.)

1. **Homicide § 25—**

Evidence tending to show that after an altercation during which defendant knocked deceased to the floor, defendant brutally kicked deceased time after time over a period of fifteen minutes while deceased was lying helpless on the floor, inflicting injuries, including a fractured skull and broken ribs, causing death, *is held* sufficient to overrule nonsuit in a prosecution for murder in the second degree; G.S. 15-173, notwithstanding that the assault was provoked.

2. **Homicide § 27f—**

Instructions of the court on defendant's plea of self-defense *held* without error.

3. **Homicide § 27a—**

Where the State does not contend that the murder was committed with a deadly weapon and is not given the benefit of any presumption created by proof of an intentional killing with such weapon, the court is not required to define the term.

4. **Same—**

The charge of the court upon the count of murder in the second degree and the count of manslaughter and in applying the law to the evidence in the case *held* without error.

APPEAL by defendant from *Gwyn, J.,* March Term, 1952, HENDERSON. No error.

Criminal prosecution under a bill of indictment which charges that defendant committed the crime of murder in the slaying of one Lola Lyda.

On 26 November 1951 there was a drinking party at the home of the deceased. Defendant twice went off to buy whiskey with money furnished by deceased. The second time he came back with a half-gallon fruit jar of liquor. Some time later deceased accused defendant of stealing his liquor. He threatened to cut defendant, got a knife, backed defendant up against the wall, and made "a rake" at him. Defendant took the knife from deceased and threw it in his truck on the outside. In this scuffle defendant received a deep gash "all the way across the fat part of his hand" and "jaggered" places on his hand and jaw. He bled profusely.

Deceased then got a shotgun and threatened to kill defendant. Defendant took the gun away from him. Deceased said he had another gun. "Then he started to dive for the door to get the other gun (in another room) and Mr. Griffin knocked him down to the floor. Mr. Griffin then began kicking him all over his shoulders and all . . . He kicked him all around his body and on his head . . . He knocked him down on the floor, and would take his foot and kick him, and directly he just hauled off and stamped down one time like that, I would say struck him here on the head, maybe kind of on the back . . ." This continued for about fifteen minutes, but he was not kicking him all the time. Blood was all over the room—the kitchen. The sheriff testified: "I don't believe there was anything in the kitchen that did not have some blood on it . . . the whole place." Defendant was persuaded to desist. It was then discovered that deceased had no pulse. Defendant tried to revive him. Failing in that, he left. Defendant was visibly under the influence of liquor but sobered up some when he saw the blood on his hand.

The deceased died almost immediately. An autopsy disclosed that his skull was fractured "as much as the shell of an egg would be fractured if pushed in." His heart was bruised, several ribs on each side were broken, and there were other injuries.

Deceased was about sixty-five years of age, in bad health, and "couldn't hardly get up when he sat down."

At the beginning of the trial the solicitor announced he would not seek a conviction of murder in the first degree. The jury returned a verdict of "guilty of manslaughter." The court pronounced judgment on the verdict and defendant appealed.

*Attorney-General McMullan and Assistant Attorney-General Love for the State.*

*Arthur J. Redden and Geo. Green for defendant appellant.*

BARNHILL, J. The record before us discloses an aggravated, vicious assault. The defendant, it is true, had been provoked. Yet it is apparent he was inspired by unreasoning passion, aroused by liquor, and that his assault upon the deceased went far beyond the requirements of legitimate self-defense. Certainly the testimony is amply sufficient to repel a demurrer and motion to dismiss under G.S. 15-173.

Notwithstanding the nature of the assault and the evidence tending to show that the defendant continued to kick and stomp the deceased after he was down helpless on the floor, the court below cautiously and prudently gave him the full benefit of his plea of self-defense. Exceptions to the charge directed to this phase of the case are without merit.

The cause was not tried on the theory defendant was killed by the use of a deadly weapon. Therefore, it was not necessary for the court to instruct the jury as to what constitutes a deadly weapon or to charge it as to whether, under the circumstances disclosed by the testimony, defendant's "feet and hands" could or could not be deemed to be such a weapon within the meaning of the law.

The State was not given the benefit of the presumption created by proof of an intentional homicide with a deadly weapon. Instead the court instructed the jury that before it could return a verdict of murder in the second degree, it must find, beyond a reasonable doubt "that the defendant unlawfully, willfully and feloniously killed Lola Lyda, and that with malice . . ."

The court further instructed the jury that if it failed to find the defendant guilty of murder in the second degree, then it should weigh the evidence to determine whether he was guilty of manslaughter, and that before it could render a verdict of manslaughter it must find beyond a reasonable doubt that defendant "unlawfully, willfully and feloniously killed" the deceased. In this connection the court fully and correctly explained the law in respect to sudden passion, excessive force, apprehension of danger, and other matters to be considered on the charge of murder in the second degree and manslaughter.

The charge of the court, both on the count of murder in the second degree and manslaughter, is so clearly in substantial accord with our former decisions the citation of authorities would serve no useful purpose. The other exceptions are formal in nature. They require no discussion.

In the trial below we find

No error.